UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

        Plaintiff,

       v.                                                     Case No. 04-CR-285

KEVIN ARNETT, PAUL CARTER,
LOUIS CLAYTON, COREY CROOK,
ANTHONY DUMAS, MONTRELL DUPRIEST,
CAMERON GILBERT, JOSEPH GOODEN,
ANTONIO GOODEN, KINYATER GRANT,
DAVID GREEN, ADRIEN HENDRIEX,
JEREMY HICKS, MARLON HOOD,
ANTONIO D. HOOD, PERCY HOOD,
DALE O. HUFF, CALVIN JAMES,
ROBERT KENNEDY, JARVIS KING,
GAYSHA KNOX, ARTHUR KOHLS,
IAN NELSON, KILO PERKINS,
TED ROBERTSON, FREDDIE L. SMITH,
LANELL TAYLOR, LATRINA TURNER,
JERRY WASHINGTON,

        Defendants.

_____

## O R D E R

On April 13, 2005, Magistrate Judge William E. Callahan, Jr. recommended that this court deny various pretrial motions filed by defendants to this case.[1]

---

[1] For ease in reading, the names of the defendants who appear in this decision will be referred to as follows: Kevin Arnett ("Arnett"), Paul Carter ("Carter"), Anthony Dumas ("Dumas"), Montrell Dupriest ("Dupriest"), Joseph Gooden ("J. Gooden"), Kinyater Grant ("Grant"), Jeremy Hicks ("Hicks"), Percy Hood ("P. Hood"), Calvin James ("James"), Robert Kennedy ("Kennedy"), and Ted Robertson ("Robertson").

Timely objections from defendants Dupriest, Grant, Hicks, and James were filed as to portions of the recommendation; and a consolidated response from the government was filed on March 18, 2005. These objections are now fully briefed and ready for decision. The objections filed related only to the recommendation's findings regarding motions relating to the Title III intercepts, motions for a bill of particulars, motions to sever, and a motion to dismiss the indictment; pursuant to 28 U.S.C. § 636(b)(1)(C), only these motions will receive a *de novo* review by this court. *See* 28 U.S.C. § 636(b)(1)(2005).

## BACKGROUND

On December 9, 2004, a grand jury sitting in this district returned a single count indictment charging each of 29 defendants with knowingly and intentionally conspiring to distribute controlled substances in violation of 21 U.S.C. § 846. Each of the defendants was arraigned and entered a plea of not guilty to the charge set forth in the indictment.[2]

## ANALYSIS

### I. Motions Related to the Title III Intercepts

Defendants Arnett, Carter, Dumas, Grant, Hicks, James, and Kennedy filed motions to suppress conversations recorded pursuant to several court ordered Title III intercepts. Magistrate Callahan recommended that this court deny these

---

[2]As of the date of this decision, more than 15 of the defendants have agreed to resolve their case by way of a plea agreement, and several have formally changed their pleas to guilty.

motions, and objections to the recommendation were filed by defendants James, Hicks, and Grant; these objections will be discussed below. The objections to the recommendation are directed to the following issues: (1) failure to minimize the interceptions, (2) failure to present a full and complete statement to the issuing court, (3) inclusion of non-enumerated offenses in the wiretap order.

In the course of the investigation, the government filed five Title III intercept applications, from July 29, 2004 through October 28, 2004. Each of the applications was supported by an affidavit of F.B.I. Special Agent Timothy Gray ("Agent Gray"). The intercept applications were for cellular telephones of defendants Robertson, J. Gooden, and P. Hood.

### A. Failure to Minimize Title III Interceptions

Defendant Hicks objects to the magistrate's analysis regarding the failure to minimize claim by pointing to conversations he feels were not properly minimized that demonstrate a pattern of interception of innocent phone calls had occurred. Hicks has specifically pointed to calls intercepted on November 14, 16, and 20, 2004, that he believes ought to be suppressed.

Title III of the Omnibus Crime Control and Safe Streets Act directs that every application and extension under this act shall be conducted in such a way as to minimize the interception of communications not covered in the act. *See* Title 18 U.S.C. § 2518(5)(2005). The Supreme Court has interpreted this requirement to be examined in the proverbial Fourth Amendment context of

"reasonableness." *See Scott v. United States*, 436 U.S. 128, 129 (1978). To establish that minimization was unreasonable, and therefore in violation of Title III's requirements as well as Fourth Amendment standards, a defendant must show a pattern of interception of innocent conversations over a period of time. *United States v. Suquet*, 547 F. Supp. 1034, 1037 (N.D. Ill. 1982).

Procedurally, the government must initially make a prima facie case that it has taken steps to properly minimize the Title III interceptions. The burden then shifts to the defendant to prove a pattern of improper interceptions. If the defendant fails to do this, the motion to suppress should be denied, even when a defendant can point to individual and particular phone calls that were not minimized. *See United States v. Gray*, 372 F. Supp. 2d 1025, 1042 (N.D. Ohio 2005)( providing an example of a procedural framework to analyze minimization claims under Title III).

The magistrate's recommendation sets forth, in great detail, several examples and specific instances where the government complied with minimization requirements. ( *See* April 13, 2005 Recommendation at 26-30.) First, prior to the activation of the wiretaps, Assistant United States Attorneys (AUSAs) Daniel Sanders and John Manning provided the case agents monitoring the calls with the interception orders, affidavits, and detailed memorandum stating the minimization procedures to be followed. *Id.* at 28. During the time period

when the wiretaps were active, the AUSAs provided to the authorizing judge reports which summarized the calls that were being intercepted, pertinent calls, calls lasting over two minutes, and minimized calls. *Id.*

Courts posed to answer similar issues have drawn upon the following factors to determine if the government has established a prima facie case: (1) the nature and complexity of the suspected crimes, along with the criminal activity involved; (2) the government's precautions in regards to minimization, and; (3) the judicial supervision over the interceptions. *Gray,* 372 F. Supp. 2d at 1044.

In applying these factors to this case, it is apparent that the government has established a prima facie showing of minimization. First, the court in *Gray* noted that "when the investigation involves a conspiracy, courts permit more surveillance, especially if the case involves a large conspiracy." *Id.* Here, the case has 29 defendants involved in a drug conspiracy; clearly falling within the ambit of the expansive conspiracy and thus more surveillance, as contemplated by the *Gray* court.

Next, the *Gray* court looked to the percentage of minimized versus non-minimized calls*. Id.* The government submitted a chart which included the total number of calls, audio calls, calls deemed pertinent, minimized calls, and calls lasting longer than 2 minutes. There were 3,224 calls that were longer than

2 minutes, and 904 minimized calls.[3] Approximately 28 percent of the calls over 2 minutes were minimized. While it is not a strict percentage game, this minimization rate seems, at the very least, to evidence that the government was in fact taking precautionary measures to minimize some of the intercepted phone calls.

The final consideration is the level of judicial supervision, and here, the amount of judicial supervision is considerable. The authorizing judge issued each order and extension for the Title III intercepts upon detailed affidavits submitted by Agent Gray. After the commencement of the interceptions, the court was provided reports approximately every 10 days summarizing the calls that had been intercepted. Additionally, Agent Gray received extensive instructions regarding proper minimization procedures throughout this process. Courts reviewing nearly identical factual situations have deemed the judicial supervision "more than adequate." *See id.*

In light of the nature and complexity of the suspected crimes, along with the criminal activity involved; the precautions taken by the government with respect

---

[3] Courts have routinely held that calls under 2 minutes in length do not need to be minimized. *See, e.g., United States v. Mansoori*, 304 F.3d 635, 645 (7th Cir. 2002)(stating that because 2 minutes is often the length of time necessary to determine if a call is pertinent or not, those calls under 2 minutes in length do not need to be minimized to comply with the statutory requirements of Title III).

to minimization; together with the judicial supervision, amply demonstrates that the government has indeed established a prima facie case of minimization.

Next, the defendants must point to a "pattern of intercepting non-pertinent phone calls." *See Gray*. In Hicks' objection to the recommendation, he points to three dates over a one week period that he alleges the intercepted calls should have been minimized but were not. The calls made on these 3 days represent only 15 calls of the total 62,716 intercepted calls. This seems hardly sufficient to satisfy the burden defendant Hicks bears of establishing a *pattern* of intercepting non-pertinent phone calls. In fact, courts analyzing improperly minimized calls at a far higher rate have unequivocally concluded that a "pattern" was not established. *See, e.g., United States v. Roth*, 669 F. Supp. 1383, 1386 (N.D. Ill. 1987) (stating that a showing of 36 calls improperly minimized did not satisfy the standard of proving a "pattern" of improper minimization). Therefore, the court concludes that Hicks has not met the burden of establishing that a pattern of calls was not properly minimized.

### B. Inclusion of Non-Enumerated Offenses

Defendant Grant objects to Magistrate Callahan's recommendation and states that the listing of non-enumerated offenses in the Title III interception applications render the applications unlawful and warrant suppression. Grant

states that the inclusion of Wisconsin state offenses fails to satisfy the statutory requirements of 18 U.S.C. § 2516 (1), and he seeks suppression of all interceptions as relief. Additionally, Grant argues that the inclusion of these non-enumerated offenses goes against the policy considerations Congress had when enacting this federal statute.

Title 18 U.S.C. § 2516 sets forth a panoply of offenses in which Title III authorizes interception. 18 U.S.C. § 2516 (1)(a)-(r)(2005). As noted in the recommendation, the orders authorized interception of communications relating to the following state offenses: (1) Wis. Stat. § 940.01(First Degree Intentional Homicide), (2) Wis. Stat. § 940.31(Kidnapping), (3) Wis. Stat. § 941.32 (Robbery), (4) Wis. Stat. § 940.29 (Possession of Firearms by a Felon), and (5) Wis. Stat. § 941.30 (Recklessly Endangering Safety); none of which are listed in the enumerated offenses authorized by Title III. *See* 18 U.S.C. § 2516 (1)(a)-(r); *(see also* Recommendation at 33.)

This court has previously addressed this issue and determined that the inclusion of non-enumerated section 2516 offenses did not invalidate a Title III interception authorization. *See United States v. O'Neill*, 27 F. Supp. 1121, 1127 (E.D. Wis. 1998). In fact, this court noted that "quite the opposite is true." *Id.* Other courts directly support this notion, and the Northern District of Illinois has

held that "the government may use lawfully obtained wiretap evidence to prove crimes not specified in the wiretap order, and may do so even if those are crimes not specifically targeted by Title III." *United States v. Marcy*, 777 F. Supp. 1400, 1403 (N.D. Ill. 1991).

Following this established case law, Grant's objection to the recommendation is without merit. While un-enumerated Wisconsin laws were also included in this authorization, the balance of the offenses enumerated were properly covered by section 2516. Additionally, the recommendation logically noted that "the moving defendants cannot show that such communications were 'unlawfully intercepted'" because there was support for the authorizations without the inclusion of the Wisconsin statutes. (*See* Recommendation at 35.)

The government adds further support to denying the motion to suppress by stating that the listed Wisconsin offenses relate to the Racketeer Influence and Corrupt Organizations (RICO) offenses of 18 U.S.C. § 1961. The government states that the state crimes listed appropriately fall under the umbrella of RICO crimes, and therefore, should not be suppressed because 18 U.S.C. § 2516 indirectly permits interception of such crimes. Citing to *United States v. Daly*, 535 F.2d 434 (8th Cir. 1976), the government accurately states that because 18 U.S.C. § 2516 authorizes wire-taps for crimes related to the RICO statute, the

applications for this case are valid. *See Daly*, 535 F.2d at 439. For example, several of the Wisconsin statutes would fall under the category of RICO offenses, such as Homicide (Wis. Stat. § 940.01), Kidnapping (Wis. Stat. § 940.31), and Robbery (Wis. Stat. § 941.32); the relevant criminal conduct RICO defines lists murder, kidnapping, and robbery in its statutory definitions of "racketeering activity." 18 U.S.C. § 1961(1).

Grant's argument drawing upon the policy considerations and congressional intent of Title III does not save his motion to suppress. The Tenth Circuit addressed a substantially similar issue where the government produced a Title III intercept application which included offenses not listed in 18 U.S.C. § 2516 and also offenses incorrectly listed as enumerated offenses. *United States v. Smart*, 278 F.3d 1168, 1173-75 (10th Cir. 2002). In *Smart*, the Court admittedly was troubled by the incorrect characterization of the listed offenses, but nevertheless stated "we cannot say that either reference to non-enumerated statutes or even the incorrect description of two non-enumerated statutes as enumerated amounts to a failure to satisfy a statutory requirement that directly and substantially implements congressional intent." Similarly, in this case, the inclusion of Wisconsin statutes along with other enumerated statutes of 18 U.S.C. § 2516 does not disturb the congressional intent that underlies Title III nor should it invalidate the authorization of the intercepts.

- 10 -
Case 2:04-cr-00285-JPS    Filed 11/09/05    Page 10 of 20    Document 563

### C. Ten-day Reports

Several motions were filed by various defendants seeking disclosure of the ten-day reports; summaries of the activity and intercepted phone calls being conducted pursuant to the authorizations that the government prepared and submitted to the authorizing judge. The magistrate recommended denial of the motions to disclose the ten-day reports, and defendants Hicks and James objected.

Title 18 U.S.C. § 2518(6) provides that orders authorizing interceptions may require periodic reports of the interceptions to be provided to the issuing judge, and such reports are to show "what progress has been made toward achievement of the authorized objective and the need for continued interception." 18 U.S.C. § 2518(6) (2005). Here, the reports were made approximately every 10 days, and will be referred to as the "ten–day reports."

Hicks and James object to the recommendation on two grounds. First, Hicks states that at the very least, he should be entitled to an in-camera inspection, and cites *United States v. Willis*, 578 F. Supp. 361 (N.D. Ohio 1984), for support. In *Willis*, the court ordered an in-camera review of the documents the defendants requested in order to make an initial determination of whether or not the government should produce the reports for the defendants. *Willis*, 578 F. Supp. at 365. The *Willis* court supported this position by stating that the in-

camera hearing seemed to be a recent trend in decisions of other circuits, and that it too would follow suit. *Id.* at 364.

However, this case is distinguishable from *Willis.* Here, the government actually did provide the summaries of the calls to the defendants. Perhaps not in the most desirable format, but the calls were nonetheless provided to the defendants. Moreover, courts have routinely held that the purpose of such reports is to ensure the authorizations and interceptions are being used properly and not abused; they are not meant to be a part of documents disclosed for discovery. *See, e.g., United States v. Brodson,* 390 F. Supp. 774, 777 (stating that because the reports defendants requested the government disclose were merely summaries of the recorded conversations that were not mandatory to create at all, the defendants' motion to disclose should be denied).

This leads to the discussion of James' objection: James asserts that it would be wholly unfair not to disclose the ten-day reports because the disk of all of the calls provided to the defendants by the government was too tedious to go through. It is to be noted that James provides no case law or statutory support for this position, but rests on the fact that fairness should dictate that the ten-day reports be made available to the defense. This court once again notes the premise that these documents serve the purpose of ensuring that the government is properly

complying with the statutory requirements of Title III, they are generally not meant to be included with discovery materials otherwise available to defendants. Therefore, as the magistrate properly found, neither Hicks' nor James' arguments provide the court with sufficient basis to warrant disclosure of the ten-day reports.

## II. Motion for Bill of Particulars

Magistrate Callahan recommended that this court deny various defendants' motions for a bill of particulars. Defendant Dupriest objects to the magistrate's recommendation regarding the motion for a bill of particulars. For the reasons stated below, this court will adopt the magistrate's recommendation.

The single count indictment charges Dupriest and his co-defendants with a violation of 21 U.S.C. §§ 841 and 846. The sentencing allegations listed in the indictment set forth the offense conduct attributable to Dupriest pursuant to U.S.S.G. §§ 1B1.3, 2D1.1(a)(3), and 2D1.1(c)(2). Furthermore, the indictment states the dates that the alleged conduct took place, and also details the conduct that forms the basis for the statutory violations.

Rule 7(f) of the Federal Rules of Criminal Procedure states that "the court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f)(2005). A motion for a bill of particulars is essentially a two-prong test in which the trial court analyzes (1) "whether the indictment sets forth the elements of the offense charged," and (2) this information "sufficiently apprises the

defendant of the charges to enable him to prepare for trial." *United States v. Kendall,* 665 F.2d 126, 134 (7th Cir. 1981)(citing *United States v. Roya,* 574 F.2d 386, 391 (7th Cir. 1978).

Courts in the Seventh Circuit have previously held that similar indictments are sufficient because they set forth the offense charge and provide enough information to help a defendant prepare for trial. *See United States v. Fassnacht,* 332 F.3d 440, 447 (7th Cir. 2003)(stating that indictments that list the elements of the offense, the conduct constituting the violation, and pertinent statutes are sufficient).

Although this indictment appears sufficient on its face to justify denying the motions for a bill of particulars, Dupriest argues in his objection that the alleged conduct in the conspiracy relating to the charges in the indictment began when he was 6 years old, and that the government needs to state with more specificity when the government alleges Dupriest became involved with the conspiracy. Dupriest argues the indictment as-is, with the broad time frame, is detrimental to him because without a more specific indication from the government alleging when he became involved with the conspiracy, he is not able to properly prepare a defense.

Suffice it to say, courts have overwhelmingly disagreed with Dupriest's argument. The Seventh Circuit has held that an indictment under 21 U.S.C.

§§ 841 and 846 need only allege the conspiracy to distribute drugs, the time frame in which it allegedly operated, and the statute violated. *See United States v. Roman*, 758 F.2d 846, 851(7th Cir. 1984). Additionally, the court in *Roman* noted "many courts, including the Supreme Court, have recognized that a conspiracy indictment need not be as detailed and specific as an indictment alleging a substantive offense." *Id.* at 852.

Furthermore, and more specific to Dupriest, the Seventh Circuit has held that the government does not need to specify the length of time each individual was involved in a conspiracy to satisfy the essential requirements of an indictment. *Id.* Broad time frames, when not arbitrary, do not render an indictment fatal. *Id.* at 851. While Dupriest is correct in asserting that the time frame the indictment states (which is between 1988 and December of 2004) is lengthy, it is not an arbitrary time frame chosen by the government to ensure that Dupriest's conduct would fall somewhere within that time period. Therefore, pursuant to *Roman,* Dupriest has not met the necessary threshold to warrant a bill of particulars.

III. Motion to Sever

Defendant Dupriest also objected to the magistrate's recommendation that his motion to sever be denied. Dupriest argues that he has no relationship with his co-defendants, and the amount of evidence the government obtained is prejudicial to a fair determination of his guilt or innocence.

Rule 8(b) of the Federal Rules of Criminal Procedure states that defendants may be joined into one action "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). In contrast to Rule 8(b), Rule 14 states that if joinder is prejudicial, then the court may order separate trials or a severance. Fed. R. Crim. P. 14. Courts have stated that there is a "strong interest in joint trials," and therefore, trial courts are to grant separate trials "when the interests of justice so require." *United States v. Diaz,* 876 F.2d 1344, 1357 (7th Cir. 1988) (citing *United States v. Moya-Gomez,* 860 F.2d 1270, 1301 (7th Cir. 1988)).

Defendants are to be severed only when it is established that a defendant will suffer prejudice in the absence of severance. *See Diaz,* 876 F.2d at 1357. The Seventh Circuit has further articulated that a showing of prejudice under Rule 14 does not simply mean that a defendant demonstrates that he would have a better chance of acquittal with a separate trial; rather, he must show that he could not have a fair trial without a separate trial. *United States v. Mohammad,* 53 F.3d 1426, 1431 (7th Cir. 1995). Thus, it is not enough for Dupriest to claim that it is less likely that he will be found guilty at a separate trial; he must be able to show that it is impossible to have a fair trial without severance.

Dupriest argues that in the weighty amount of government evidence, the other defendants in this case are implicated far more than he is. However, the Seventh Circuit has held that "the fact that the evidence against co-defendants might have been proportionally greater than evidence against him is not itself grounds for severance." *United States v. Hendrix,* 752 F.2d 1226, 1232 (7th Cir. 1985). Therefore, Dupriest, pointing only to disproportionate amounts of evidence, is not able to satisfy the standard of prejudice under Rule 14 as interpreted by the Seventh Circuit.

Additionally, joinder may be appropriate despite disparate amounts of evidence as to each defendant because the court is able to provide appropriate limiting instructions to the jury that would cure any potential prejudice or unfairness. Here, for example, the trial court could explicitly instruct that certain evidence not be considered against Dupriest individually. Courts have held that limiting instructions such as this would be insufficient only if the defendant is able to overcome the presumption that the jury is capable of sorting through evidence and following instructions to consider the evidence as to each defendant separately. *See United States v. Lopez*, 6 F.3d 1281, 1286 (7th Cir. 1993).

While Dupriest continually notes the substantial disparity in the evidence against him when compared to other defendants, he has not articulated why a jury could not comprehend this and properly follow appropriate limiting instructions

given by the court. Simply noting that there is a large amount of complicated evidence does not overcome the *Lopez* presumption that a jury would not be able to sort through the evidence or follow instructions. Therefore, the magistrate's recommendation will be adopted.

IV. Motion to Dismiss the Indictment as to Defendant James

James filed a motion to dismiss the indictment because the government failed to produce evidence that James was involved in the conspiracy. The magistrate recommended that this court deny James' motion to which James objects.

To justify the dismissal of an indictment, the defendant must show that even if all of the allegations set forth in the indictment were true, they would not rise to the level of an offense. *See United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004). In his objection, James essentially states that the indictment against him is pre-textual to the extent that the government is "holding this indictment over his head" in an effort to get him to testify against other defendants. James' objection simply fails to meet the necessary standard to warrant a dismissal of the indictment, and therefore, the court is obliged to adopt the magistrate's recommendation denying his motion to dismiss.

## V. Other Motions

Several of the motions addressed in the magistrate's recommendation were not timely objected to, or alternatively did not raise any further legal foundation beyond that submitted to the magistrate. Accordingly, pursuant to 28 U.S.C. § 636, this court will adopt the recommendation as to the following motions: motions that challenge the Title III intercepts for a failure to provide a full and complete statement and failure to show necessity; motions to suppress evidence seized pursuant to a search warrant; motions to suppress statements; motions for disclosure of confidential informants; motions for pretrial notice of other crimes and acts evidence; motions for notice of intent to introduce expert testimony; motions to strike sentencing allegations; motions relating to miscellaneous discovery motions; and motions requesting extension of time.

Finally, in order to facilitate scheduling those cases that have not yet been scheduled for disposition, counsel for the government and each defendant expecting to proceed to trial shall confer and thereafter prepare and file a joint status report on or before December 1, 2005, the final cutoff date established by the court for acceptance of responsibility credit under U.S.S.G. 3E1.1. The report shall include counsels' preferences with respect to grouping no more than three to four defendants for purposes of trial; the anticipated length of the trial(s), together with any specific requests as may be related to further scheduling.

Upon receipt of the status report the court will proceed with scheduling final pretrial conferences and trial(s) for late January and February 2006. Accordingly,

IT IS ORDERED that Magistrate Judge William E. Callahan, Jr.'s April 13, 2005, Recommendation and Order be and the same is hereby ADOPTED as the order of this court.

Dated at Milwaukee, Wisconsin, this  9th  day of November, 2005.

BY THE COURT:

 s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge

- 20 -
Case 2:04-cr-00285-JPS   Filed 11/09/05   Page 20 of 20   Document 563